UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MICHAEL TORRES,**

                               **Plaintiff,**

                                **v.**

**NEW YORK STATE
DEPARTMENT OF CORRECTIONS
AND COMMUNITY
SUPERVISION et al.,**

                                **Defendants.**

**9:20-cv-301
(GLS/TWD)**

_____

## SUMMARY ORDER

Plaintiff Michael Torres commenced this action against defendant New York State Department of Corrections and Community Supervision (DOCCS), as well as defendants Timothy Mannocchi,[1] Trevor Paton,[2] Cheryl Morris,[3] and Jason Gibson[4] (collectively, hereinafter "individual

---

[1] Mannocchi was Torres' vocational instructor in the "Building Maintenance Program" at Eastern Correctional Facility (hereinafter "Eastern C.F."). (Compl. ¶ 10.)

[2] Paton is the Educational and Vocational Supervisor at Eastern C.F., and "is responsible for arranging accommodations for . . . Torres," such as "allowing him to participate in DOCCS' programs to further his education and vocational training." (*Id.* ¶ 11.)

[3] Morris is the Deputy Superintendent of Programs at Eastern C.F., and "is responsible for prison programs, providing disability accommodations to eligible inmates[,] and ensuring the facility's compliance with the ADA." (*Id.* ¶ 12.)

[4] Gibson is the Translator for Manual Communications for inmates with sensorial disabilities at Eastern C..F., and has "oversight" over the Sensorial Disability Unit's resource room. (*Id.* ¶ 13.)

defendants"), alleging claims pursuant to Title II of the Americans with Disabilities Act (ADA),[5] Section 504 of the Rehabilitation Act of 1973,[6] and 42 U.S.C. § 1983. (Compl., Dkt. No. 1.)

## I. **Background**[7]

Torres is an inmate in the custody of DOCCS and is currently confined at Eastern Correctional Facility (hereinafter "Eastern C.F.") in Napanoch, New York. (*Id.* ¶ 4.) He has struggled with learning disabilities and cognitive difficulties all of his life, and has been diagnosed with dyslexia and dyscalculia,[8] which negatively affect his ability to learn, read, concentrate, communicate, interact with others, speak, think, and work. (*Id.* ¶¶ 5-6, 21-22.) Due to his disabilities, Torres needs "accommodating devices" in order to properly partake in the educational programs offered at Eastern C.F., and to do "legal work." (*Id.* ¶¶ 40, 85.) Indeed, Torres "cannot type or read text and simultaneously comprehend the content," and "needs to listen to what he is typing while viewing it on a screen in order to

---

[5] *See* 42 U.S.C. §§ 12101-213.

[6] *See* 29 U.S.C. §§ 701-96*l*.

[7] The facts are drawn from Torres' complaint, (Dkt. No. 1), and presented in the light most favorable to him.

[8] Torres notes that dyscalculia is a "brain disorder that negatively impacts one's ability to understand, interpret[,] or complete arithmetical calculations." (Compl. ¶ 19.)

2

compose and edit documents." (*Id.* ¶ 41.)

For reasons thoroughly explained throughout Torres' complaint, he alleges that Eastern C.F.'s policies create an environment where Torres cannot: (1) do legal work or use the accommodating devices in the Sensorial Disability Unit (SDU) resource room, (2) do legal work in the law library, except such work that is related to his criminal conviction, (3) conduct research on Westlaw, or (4) properly save the limited amount of work he can do on an accommodating computer. (*Id.* ¶¶ 49-113).

Additionally, Torres alleges that his instructors in Eastern C.F.'s "Building Maintenance Program" retaliated against him for filing grievances by giving him poor ratings in his progress reports. (*Id.* ¶¶ 114-34.) Torres was in the program for approximately two years, and had received positive reviews from his instructors, despite a noted difficulty in using power tools. (*Id.* ¶¶ 118-20.) However, after Torres filed two grievances regarding instances with respect to the use of such tools, Mannocchi gave him average and lower ratings in his progress report. (*Id.* ¶¶ 127-28.) Torres alleges that these negative ratings were made in order to justify his eventual removal from the program by Paton and Morris in June 2018—two weeks before completion. (*Id.* ¶¶ 130-33.)

3

Torres filed his complaint on March 17, 2020.  (Compl.)  The complaint alleges four causes of action: (1) violation of Title II of the ADA against all defendants, including individual defendants in their official capacities; (2) violation of Section 504 of the Rehabilitation Act against all defendants, including individual defendants in their official capacities; (3) a First Amendment claim pursuant to 42 U.S.C. § 1983, against Morris and Gibson in their individual capacities, based on allegations that the "Computer Usage Agreement"[9] denies Torres the necessary accommodations for completing legal work; and (4) a First Amendment denial of access to the inmate grievance program and courts claim pursuant to 42 U.S.C. § 1983 against Morris in her individual capacity. (*Id.* ¶¶ 135-58.)

Now pending is individual defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), in which they seek dismissal of Torres' ADA and Rehabilitation Act claims as against them, as well as his First Amendment claim with respect to the alleged denial of Torres' access to

---

[9]  Before an inmate can use the equipment in the SDU resource room, they must sign the "Computer Usage Agreement," which provides that any computer they use "will be used for legitimate organizational, academic, or other duties, as assigned, that may pertain to [their] program assignment."  (*Id.* ¶¶ 81-82.)  According to Torres, this effectively prohibits him from using the computers to do legal work.  (*Id.* ¶ 83.)

the courts.  (*See generally* Dkt. No. 15.)

## II. Discussion

As an initial matter, in response to individual defendants' motion to dismiss, Torres voluntarily dismissed his denial of access to the courts claim, pursuant to Fed. R. Civ. P. 41(a).  (Dkt. No. 18 at 1 n.1.)  Accordingly, individual defendants' motion to dismiss with respect to that claim is granted, and the claim is dismissed without prejudice.  Consequently, the only claims subject to the remainder of this Summary Order are Torres' claims pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act, which he asserts against all defendants, including individual defendants in their official capacities.  (Compl. ¶¶ 135-50.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Title II of the ADA and Section 504 of the Rehabilitation Act are applicable to inmates in state prisons. *See Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005). The standards for an inmate's claim under the ADA and the Rehabilitation Act are "generally the same," so the two statutes are analyzed "identically." *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) (citation omitted). In order to state a claim under these acts, Torres must show that "1) he is a qualified individual with a disability; 2) DOCCS is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability." *Id.* (citation omitted).

Torres alleges that defendants violated Title II of the ADA and Section 504 of the Rehabilitation Act "by denying him access to the SDU [r]esource [r]oom computers[,] which have the audio features he needs to read and write unassisted," and because defendants otherwise "failed to reasonably accommodate . . . Torres so he could finish the Building Maintenance [P]rogram." (Compl. ¶¶ 137-40, 147-50.)

6

Individual defendants move to dismiss these claims as against them, arguing that individuals in general "may not be held personally liable for alleged violations of either the ADA or the Rehabilitation Act." (Dkt. No. 15, Attach. 3 at 4.)  In response, Torres' argues that he is not attempting to hold individual defendants personally liable under these statutes, as he brought these claims against them in their official capacities only.  (Dkt. No. 18 at 3.)  On reply, individual defendants contend, for the first time, that there is "no need for official capacity litigation when a plaintiff can seek relief directly against a government entity." (Dkt. No. 21 at 3 (internal quotation marks and citation omitted).)  They also add that, if Torres' claims survive, they can only survive insofar as Torres seeks prospective injunctive relief, and not declaratory relief or compensatory damages.  (*Id.* at 3-4.)

"It is well-settled that neither Title II of the ADA nor [Section] 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Hill v. LaClair*, No. 9:20-CV-441, 2020 WL 2404771, at *7 (N.D.N.Y. May 11, 2020) (internal quotation marks and citation omitted). Additionally, suits for money damages against state officials in their official capacities are barred by the Eleventh Amendment.  *See Donohue v.*

7

*Cuomo*, 980 F.3d 53, 77 n.15 (2d Cir. 2020); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit . . . for money damages against state officials in their official capacities." (citation omitted)).

However, the Supreme Court has established that plaintiffs can properly bring a federal action "seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." *Hill*, 2020 WL 2404771 at *5 n.4 (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Under this doctrine, an action may proceed against a state official when a plaintiff: "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (internal quotation marks and citation omitted); *see Donohue*, 980 F.3d 77 n.15 ("[F]ederal courts may hear claims for prospective injunctive relief against state officials, but retroactive claims seeking monetary damages . . . are barred by the Eleventh Amendment." (citation omitted)); *CSX Transp., Inc. v. N.Y.S. Office of Real Prop. Servs.*, 306 F.3d 87, 99 (2d Cir. 2002) ("*Ex Parte Young* allows for jurisdiction over the Individual Defendants inasmuch as it is in the performance of their duties that there may be an ongoing violation of federal law.").

Here, Torres clearly brings his ADA and Rehabilitation Act claims against individual defendants in their official capacities, and, thus, does not attempt to improperly hold them *personally* liable under these statutes. (Compl. ¶¶ 135-50; Dkt. No. 18 at 3-5.)  Further, to the extent individual defendants argue that official capacity litigation here is unnecessary given that Torres sued the government entity, DOCCS, directly, (Dkt. No. 21 at 3), this argument was made for the first time on reply, and, thus, is not considered by the court.  *See Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016), *aff'd*, 707 F. App'x 724 (2d Cir. 2017) ("It is well-established that arguments may not be made for the first time in a reply brief." (internal quotation marks and citation omitted)).

Notably, however, Torres' claims pursuant to the ADA and the Rehabilitation Act against individual defendants in their official capacities may be maintained only insofar as they seek prospective injunctive relief, and not monetary damages or declaratory relief.  *See Donohue*, 980 F.3d at 77 n.15; *In re Deposit Ins. Agency*, 482 F.3d at 618; *Hill*, 2020 WL 2404771 at *5 n.4.

Accordingly, individual defendants' motion to dismiss with respect to Torres' claims pursuant to Title II of the ADA and Section 504 of the

9

Rehabilitation Act is denied insofar as Torres seeks prospective injunctive relief, and granted insofar as Torres seeks monetary damages or declaratory relief against them.

Accordingly, it is hereby

**ORDERED** that individual defendants' motion to dismiss (Dkt. No. 15) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** as to Torres' claims pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act, as against individual defendants, insofar as Torres seeks monetary damages or declaratory relief against them; and
>
> **GRANTED** as to Torres' First Amendment claim with respect to denial of access to the courts, which claim for relief is **DISMISSED WITHOUT PREJUDICE**; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain: (1) violation of Title II of the ADA against all defendants, including individual defendants in their official capacities insofar as Torres seeks prospective injunctive relief; (2) violation of Section 504 of the Rehabilitation Act against all defendants, including individual defendants in their official capacities insofar as Torres

seeks prospective injunctive relief; and (3) a First Amendment claim pursuant to 42 U.S.C. § 1983, against Morris and Gibson in their individual capacities, based on allegations that the Computer Usage Agreement denies Torres the necessary accommodations for completing legal work; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Thérèse Wiley Dancks to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

December 11, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge