**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL TORRES,**

<b>Plaintiff,</b>

     **vs.**                                                            **9:20-CV-0301**
                                                                              **(MAD/TWD)**

**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONS AND COMMUNITY SUPERVISION,**
**TIMOTHY MANNOCCHI, TREVOR PATON,**
**CHERYL MORRIS,** *and* **JASON GIBSON,**

<b>Defendants.</b>
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**LAW OFFICE OF AMY JANE**                  **AMY JANE AGNEW, ESQ.**
**AGNEW, P.C.**
**24 Fifth Avenue**
**Suite 1701**
**New York, NY 10011**
**Attorneys for Plaintiff**

**OFFICE OF THE NEW YORK**                  **ADRIENNE J. KERWIN, ESQ.**
**STATE ATTORNEY GENERAL**             **LAUREN ROSE EVERSLEY, ESQ.**
**The Capitol**
**Albany, New York 12224**
**Attorneys for Defendants**

**Mae A. D'Agostino, U.S. District Judge:**

<b>MEMORANDUM-DECISION AND ORDER</b>

<b>I. INTRODUCTION</b>

Plaintiff, an inmate in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"), commenced this action under Title II of the Americans with

Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and 42 U.S.C. § 1983

("Section 1983") seeking injunctive relief and monetary damages. *See* Dkt. No. 1. Currently

before the Court are Defendants' motion for summary judgment and Plaintiff's cross motion for partial summary judgment.  For the following reasons, Defendants' motion is granted in part and denied in part and Plaintiff's cross motion is denied.

## II.  FACTUAL BACKGROUND[1]

Plaintiff is an inmate in the custody of DOCCS.  *See* Dkt. No. 70-2 at ¶ 1.  Plaintiff is currently diagnosed with learning disabilities, specifically in the areas of reading and mathematics, which interfere with his academic achievements or activities of daily living that require reading, mathematical, or writing skills.  *Id.* at ¶ 11.  Plaintiff was also diagnosed with dyslexia, dysgraphia, and attention-deficit/hyperactivity disorder ("ADHD").  Dkt. No. 85-1 at ¶ 7.  Plaintiff also suffers from non-significant hearing loss and poor vision.  Dkt. No. 70-2 at ¶ 12.

In February 2013, Plaintiff entered into a settlement agreement resolving a lawsuit filed by Plaintiff against DOCCS in 2011, while he was confined at Green Haven Correctional Facility ("Green Haven C.F.").  Dkt. No. 77-1; *see Torres v. DOCCS, et al.*, 11 Civ. 05762 (S.D.N.Y. filed Aug. 4, 2011) ("*Torres I*"), Dkt. Nos. 2, 40.  Of relevance herein, DOCCS agreed to provide Plaintiff with reasonable accommodations related to standardized testing assistance including, but not limited to, extended time, supervised breaks, audiocassette with extended time, scribe, or the use of a calculator or talking calculator when permissible on the mathematics portion of the standardized tests.  Dkt. No. 77-1 at 2-3.[2]  DOCCS also agreed to provide reasonable classroom

---

[1]  The Court has deemed the following facts to be undisputed based on the admissible record evidence and the parties' factual contentions.  The Court notes that Plaintiff refers to the "Lewis Tr." in his Response to Defendants' Statement of Undisputed Facts and Plaintiff's Undisputed Facts in Support of the Cross Motion.  *See generally* Dkt. No. 79.  However, the transcript of Heidi Lewis, a non-party, is not part of the record before the Court.

[2]  The cited page numbers for docket entries in this Order refer to those assigned by the Court's electronic filing system ("ECF").

accommodations.  *Id*. at 3.

**A.  SDU Resource Room and Computer Usage**

In 2016, Plaintiff was transferred to Eastern Correctional Facility ("Eastern C.F.").  Dkt. No. 70-2 at ¶ 10.  Pursuant to an internal agreement that did not involve any named defendants, the former Deputy Superintendent of Programs ("DSP") and former Vocation Rehabilitation Counselor at Eastern C.F. granted Plaintiff access to the Sensorily Disabled Unit ("SDU") Resource Room to utilize the Stand Alone Reading Apparatus ("SARA") machine and SDU-enabled computers.  *Id*. at ¶¶ 25-26.  SARA machines are self-contained scanning and reading appliances that read the contents of a document out loud to the user or enlarge the text for ease of reading.  *Id.* at ¶ 21.  SDU-enabled computers have a program called Zoomtext.  *Id*. at ¶ 24.

Inmates utilizing the SDU computers in the SDU Resource Room are required to sign the Computer Usage Agreement (the "Agreement").  Dkt. No. 70-2 at ¶ 47.  The Agreement states that the signatory agrees that any computer assigned to or used by him will be for "legitimate organizational, academic, or other duties, as assigned, that may pertain to [his] program assignment."  *Id*. at ¶ 48.  The Agreement also provides, "any misuse of any computer assigned to [the individual] or used by [the individual] will result in termination of this privilege."  *Id*. at ¶ 49.  In August 2016, Plaintiff executed the Agreement.  Dkt. No. 77-6 at 1.

In 2018, Plaintiff requested additional access to the Resource Room from Defendant Jason Gibson ("Gibson"), a Sign Language Translator who oversaw the Resource Room.  Dkt. No. 70-2 at ¶¶ 2, 3, 27; Dkt. No. 70-11 at 34.  Gibson forwarded the request to Defendant DSP Cheryl Morris ("Morris").  Dkt. No. 70-2 at ¶¶ 5, 27.  Morris determined that Plaintiff should be afforded the accommodations set forth in the *Torres I* settlement agreement and thus, Plaintiff's access to

the Resource Room was revoked. *Id*. at ¶ 28; Dkt. No. 85-1 at ¶40. Plaintiff was informed that he could access the SARA machine in the academic and vocational programming areas and in the general and law libraries. Dkt. No. 70-2 at ¶ 29.

In January 2019, in response to a letter from the Legal Aid Society, Morris indicated that, "Inmate Torres has access to a SARA reader, as well as other accommodations, including program assistant and instructor assistance in the Academic and Vocational programming area as well as in the general and law libraries." Dkt. No. 78-6 at 30-31. Morris noted that the law library is equipped with a SARA reader and the law library computer may be used for legal research and writing and has the same programs/software as the Resource Room computers. *Id.*

As of the date of the motions, Plaintiff was afforded the following accommodations for educational and academic programming purposes: (1) testing accommodations including 200% extended time on all tests, a testing location free of distractions and a rest break every 30 minutes, consistent with previous recommendations; (2) access to a SARA machine with audio capabilities to assist with reading in educational environments; (3) access to audiobooks for cell and independent use; (4) access to one-on-one support with reading as necessary with repetitive demonstrations and paraphrased recall of directions for educational purposes; (5) a talking dictionary; and (6) access to a talking calculator. Dkt. No. 70-2 at ¶ 31.

**B. Removal from Building Maintenance Program**

On or around June 27, 2016, Plaintiff became a student in the Eastern C.F. Building Maintenance Program. Dkt. No. 70-2 at ¶ 38. The Building Maintenance Program is a vocational training class offered at Eastern C.F. and includes vocational training in the areas of electric, plumbing, carpentry, and power tools. *Id*. at ¶¶ 32-33. Inmates with disabilities may request reasonable accommodations that would allow them to participate in the vocational program. *Id*.

at ¶ 35.  However, an inmate may be reassigned from a vocational program if they do not progress significantly in their ability to become proficient in the trade.  *Id*. at ¶ 36.  Further, an inmate may be reprogrammed if it is determined that he may better succeed in another program.  Dkt. No. 70-2 at ¶ 37.

During his time in the Building Maintenance Program, Plaintiff "progressed well" earning average and above average scores on his general evaluations.  Dkt. No. 70-6 at ¶ 8, p. 10-15.  On two occasions, Plaintiff received Inmate Counseling Notifications.  Dkt. No. 70-6 at pp. 21, 23.  On December 17, 2017, an Inmate Counseling Notification was issued after Plaintiff failed to attend programming.  *Id*. at p. 23.  On March 27, 2018, Defendant Timothy Mannocchi ("Mannocchi"), a Vocational Instructor for the Building Maintenance Program, issued an Inmate Counseling Notification for, "unsafe operation of power tools" and restricted Plaintiff's access to power tools.  Dkt. No. 70-2 at ¶ 7; Dkt. No. 70-6 at p. 21.

On April 6, 2018, Plaintiff filed a Request for Reasonable Accommodation seeking the following: "(1) one on one hand[s] on trai[ning] with the vocational instructor or instructor assistance for a half hour to hour; (2) that [he] receive multiple training on the use of power tools by the vocation instruct[or] or instructor assistance; and (3) if possible, a separate area that would allow me to avoid distraction in the shop."  Dkt. No. 70-2 at ¶ 42; Dkt. No. 70-4 at pp. 37-39.

On May 1, 2018, Morris denied the request noting, "[i]t is not feasible to provide 1:1 training from the instructor who has to manage the class and assist others.  Accommodation is not reasonable."  Dkt. No. 70-2 at ¶ 44; Dkt. No. 70-4 at pp. 37-39; Dkt. No. 85-1 at ¶ 64.

On June 13, 2018, Mannocchi, Morris, and Defendant Trevor Paton ("Paton"), the vocational supervisor, submitted a Request for Waiver From the Required Vocational Educational Program due to disciplinary and safety reasons.  Dkt. No. 78-6 at 3.  Defendants cited to

Plaintiff's December 2017 and March 2018 Inmate Counseling Notifications.  *Id.*

On June 24, 2018, Plaintiff was reassigned from the Building Maintenance Program to the painting program.  Dkt. No. 70-4 at ¶ 30.  Plaintiff is no longer participating in the painting program.  Dkt. No. 70-6 at ¶ 18.

### III.  PROCEDURAL HISTORY

On March 17, 2020, Plaintiff filed the complaint in this action alleging four causes of action: (1) violation of the ADA against all defendants, including individual defendants in their official capacities; (2) violation of the RA against all defendants, including individual defendants in their official capacities; (3) First Amendment claims against Morris and Gibson in their individual capacities, based on allegations that the "Computer Usage Agreement" denies Plaintiff the necessary accommodations for completing legal work; and (4) a First Amendment denial of access to the inmate grievance program and courts claim against Morris, in her individual capacity.  Dkt. No. 1.  On June 15, 2020, DOCCS filed an answer to the complaint.  Dkt. No. 14.

On June 15, 2020, Defendants Mannocchi, Paton, Morris, and Gibson filed a motion to dismiss pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and (6) seeking dismissal of Plaintiff's ADA and RA claims as against them, as well as his First Amendment claim with respect to the alleged denial of Plaintiff's access to the courts.  Dkt. No. 15.  In response to the motion, Plaintiff voluntarily dismissed his fourth cause of action as against Morris.  Dkt. No. 17.

In an Order filed on December 11, 2020 (the "December Order"), the Court granted Defendants' motion with respect to Plaintiff's ADA and RA claims against the individual defendants, insofar as Plaintiff sought monetary damages or declaratory relief against them.  Dkt. No. 22.  As a result of the December Order, the following claims remain: (1) violation of the

ADA against all defendants, including individual defendants in their official capacities insofar as Plaintiff seeks prospective injunctive relief; (2) violation of the RA against all defendants, including individual defendants in their official capacities insofar as Plaintiff seeks prospective injunctive relief; and (3) First Amendment claims against Morris and Gibson in their individual capacities based on allegations that the Computer Usage Agreement denies Plaintiff the necessary accommodations for completing legal work. *Id*. at 10-11.

On May 11, 2023, Defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of all claims. Dkt. No. 70. Defendants argue that Plaintiff cannot establish an ADA, RA, or First Amendment violation. *See generally* Dkt. No. 70-1. With respect to the ADA and RA claims, Defendants also contend: (1) DOCCS is not subject to vicarious liability for the acts of its employees; (2) Morris, Paton, Mannocchi, and Gibson are not proper parties for prospective injunctive relief; (3) compensatory damages are unavailable with respect to Plaintiff's ADA and RA claims; and (4) the Eleventh Amendment bars Plaintiff's claim for money damages with respect to his ADA claim. *See id.*

Plaintiff opposed Defendants' motion and cross moved for summary judgment on his RA claims against DOCCS. Dkt. No. 76; Dkt. No. 80 at 23.

## IV. DISCUSSION

### A. Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id*. at

36-37 (quotation and other citation omitted).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 258 (1986).  In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc*., 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.' "  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed R. Civ. P. 56(c)(4)).

**B.  First Amendment Claims**

As discussed *supra*, the Plaintiff's only remaining First Amendment claims are claims

against Morris and Gibson in their individual capacities, based on allegations that the Computer

Usage Agreement denies Plaintiff the necessary accommodations for completing legal work.  Dkt.

No. 22 at 11.

Now, Defendants move for summary judgment and dismissal of the remaining First

Amendment claims.  Dkt. No. 70-1 at 20-24.  Defendants argue, "it is unclear how either

Defendant [ ] violated Plaintiff's First Amendment rights or what injuries Plaintiff suffered [. . .]

especially where Plaintiff voluntarily discontinued his access to the courts claim."  *Id*. at 21.

Plaintiff did not oppose Defendants' motion on this issue.

"A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to

respond to a defendant's arguments that the claim should be dismissed.' "  *Martinez v. City of New*

*York*, No. 11-CV-7461, 2012 WL 6062551, *1 (S.D.N.Y. Dec. 6, 2012) (quoting *Lipton v. County*

*of Orange*, 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004)).  When a defendant files a summary

judgment motion, "a partial response arguing that summary judgment should be denied as to some

claims while not mentioning others may be deemed an abandonment of the unmentioned claims."

*Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014); *see also Ruggiero v. Cnty. of Orange*,

No. 20-CV-7693, 2023 WL 7005074, at *7 (S.D.N.Y. Oct. 24, 2023).  If a plaintiff fails to

address a defendant's substantive arguments on a motion for summary judgment, plaintiff may be

deemed to have abandoned those claims.

Here, Plaintiff filed a 23-page response to Defendants' motion but failed to include any

argument in support of his First Amendment claims.  Thus, the Court finds that Plaintiff has

abandoned his First Amendment claims.  *See Di Giovanna v. Beth Israel Med. Ctr.*, 651

F.Supp.2d 193, 208 (S.D.N.Y. 2009) (citing cases).

Even when a plaintiff abandons a claim, the Court may exercise its discretion and examine

the merits of the First Amendment claims.  *See Est. of M.D. by DeCosmo v. New York*, 241

F.Supp.3d 413, 423 (S.D.N.Y. 2017) (reasoning that the court may exercise its discretion and

examine the merits of an abandoned claim); *see also Masciotta v. Clarkstown Cent. Sch. Dist.*,

No. 14-CV-7128, 2016 WL 4449660, at *7 (S.D.N.Y. Aug. 23, 2016).

To the extent that the complaint could be construed to include a First Amendment claim

based upon the right to petition, it is well-established that a prison inmate has no constitutional

right of access to an internal grievance process.  *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP),

2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007); *Davis v. Buffardi*, No. 9:01-CV-0285

(PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate

grievance process is not a constitutionally protected right."); *Cancel v. Goord*, No. 00-CV-2042,

2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are

not required by the Constitution" and therefore failure to see to it that grievances are properly

processed does not create a claim under Section 1983).

Similarly, Plaintiff does not have a First Amendment right to use a computer.  *Nicholas v.

Mantello*, 104 F.3d 353 (2d Cir. 1996); *see also Lehn v. Hartwig*, 13 Fed. App'x 389, 392 (7th

Cir. 2001) ("If prisoners have no constitutional right to a typewriter, they certainly do not have

one to a computer.") (internal citations omitted).

Accordingly, Defendants' motion for summary judgment and dismissal of Plaintiff's First

Amendment claims is granted.[3]

---

[3] Defendants provided an argument on First Amendment retaliation in response to Plaintiff's deposition testimony concerning retaliation.  *See* Dkt. No. 70-1 at 23-24.  The Court notes that Plaintiff is represented by counsel and was represented by counsel when he filed his complaint.  Because no claim for retaliation is alleged in Plaintiff's complaint or anywhere else in the pleadings, the Court will not engage in an analysis of any such claim.  *See Williams v. Altec Indus., Inc.*, No. 5:10-CV-356, 2011 WL 3420444, at *4 (E.D.N.C. Aug. 3, 2011) (reasoning that because a retaliation claim does not appear in the pleadings, the Court will not adjudicate any such claim) *aff'd*, 467 Fed. App'x 173 (4th Cir. 2012); *see also Bigam v. City of Pepper Pike*, 849 F.2d 1472, at *4, n.4 (6th Cir. 1988) (disregarding the plaintiff's deposition testimony regarding retaliation where no retaliation claim was made in the complaint).

**C.  Vicarious Liability**

Defendants argue that all claims against DOCCS should be dismissed because vicarious liability is not available under the ADA or RA.  *See* Dkt. No. 70-1 at 10-11.  Defendants rely on decisions from the Sixth and Eleventh Circuits that have held that vicariously liability is not available under Title II.  *See id.* (citing *Jones v. City of Detroit*, 20 F.4th 1117, 1121 (6th Cir. 2021); *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022)).  Plaintiff argues that the "appropriate official theory" set forth in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998) applies.  *See* Dkt. No. 80 at 21-22.

Although the issue has not been directly addressed by the Second Circuit, the vast majority of district courts in the Second Circuit have found that vicarious liability is available under the ADA and RA.  *See, e.g., Thomas v. Town of Lloyd*, No. 1:21-CV-1358 (DNH), 2022 WL 1747650, *10 (N.D.N.Y. May 31, 2022); *Bowen v. Rubin*, 385 F.Supp.2d 168, 180 (E.D.N.Y. 2005) (holding that vicarious liability applies to the plaintiff's claims under the ADA and RA and that the defendant employer could be held liable for the employee's actions if the conduct at issue was undertaken with the scope of her employment and were "(1) the kinds of acts she was supposed to perform; (2) occurred substantially within authorized time and space limits; and (3) were actuated, at least in part, by a purpose to serve her master"); *Lalonde v. City of Ogdensburg*, 8:22-CV-0164 (LEK/DJS), 2023 WL 2537626, *23 (N.D.N.Y. Mar. 16, 2023) (holding that "it is well-settled that vicarious liability principles apply under the ADA") (citations omitted); *Morales v. City of New York*, No. 13-CV-7667, 2016 WL 4718189, *7 (S.D.N.Y. Sept. 7, 2016) ("[T]he law is clear that municipalities may be held vicariously liable for violations of Title II of the ADA and Section 504 of the Rehabilitation Act committed by their agents"); *Doe v. Deer Mountain*

*Day Camp, Inc.*, 682 F.Supp.2d 324, 348 (S.D.N.Y. 2010) (same); *Palmer v. City of Yonkers*, 22

F.Supp.2d 283, 287 (S.D.N.Y. 1998) ("[G]eneral vicarious liability principles apply under the

ADA").  Upon review, the Court agrees with those courts and other circuit court decisions that

have held that vicarious liability is available under the ADA and the RA.  *See Duvall v. County of*

*Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001); *Delano-Pyle v. Victoria County, Tx.*, 302 F.3d 567,

574-75 (5th Cir. 2002); *Rosen v. Montgomery Cty. Md.*, 121 F.3d 154, 157 n.3 (4th Cir. 1997).

These decisions are consistent with the broad, remedial purposes of these statutes.

Accordingly, the Court denies this aspect of Defendants' motion.

**D.  ADA and RA Claims**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of . . . a public

entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of

the RA, "protects a 'qualified individual with a disability' from exclusion of participation, denial

of the benefits, or subjection to discrimination 'under any program or activity receiving Federal

financial assistance,' because of the individual's disability."  *Harrington v. Vadlamudi*, No.

9:13-CV-0795 (LEK/RFT), 2014 WL 4829483, at *3 (N.D.N.Y. Sept. 29, 2014) (citing 29 U.S.C.

§ 749(a)).  Although "there are subtle differences between these disability acts, the standards

adopted by Title II of the ADA for State and local government services are generally the same as

those required under section 504 of federally assisted programs and activities."  *Henrietta D. v.*

*Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citation omitted); *see also Graham v. Watertown*

*City Sch. Dist.*, No. 7:10–CV–756 (DNH), 2011 WL 1344149, *9 (N.D.N.Y. Apr. 8, 2011) ("The

ADA and Rehabilitation Act causes of action for failure to accommodate will be considered

together").

"In order to establish a prima facie violation under these acts, [Plaintiff] must show that 1) he is a qualified individual with a disability; 2) DOCCS is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  The protections offered under Title II and the RA extend to inmates in state correctional facilities.  *See Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998).

### 1.  First Element - Qualified Individual

A qualifying "disability" under the ADA is a "physical or mental impairment that substantially limits one or more major life activities," or "being regarded as having such an impairment."  29 C.F.R. § 1630.2(g).  "[M]ajor life activities include . . . learning, reading, concentrating, thinking . . . and working," as well as "the operation of a major bodily function, including . . . neurological, brain . . . [and] endocrine . . . functions."  42 U.S.C. § 12102(2)(A)-(B).  "The term '[s]ubstantially limits' is not meant to be a demanding standard, but it is well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations."  *Collins v. Giving Back Fund*, No. 18 Civ. 8812, 2019 WL 3564578, *13 (S.D.N.Y. Aug. 6, 2019) (quoting *Whalley v. Reliance Grp. Holdings, Inc*., No. 97 Civ. 4018, 2001 WL 55726, *4 (S.D.N.Y. Jan. 22, 2001)).

The record establishes that, as early as 2004, Plaintiff began requesting, and receiving, accommodations from DOCCS to assist him with his reading comprehension and math calculations.  *See* Dkt. No. 70-3 at 123; Dkt. No. 77-4 at 1; Dkt. No. 78-3 at 9-10.  Defendants concede that Plaintiff is disabled under the ADA, *see* Dkt. No. 70-1 at 15, but contend that Plaintiff is not "sensorially disabled" for the purposes of using the SDU Resource Room and

devices therein.  That argument requires an analysis of whether Plaintiff was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability.

### 2.  Third Element - Participation in Programs and Services

With respect to the third element, the Court must determine "whether, a plaintiff with disabilities 'as a practical matter,' was denied 'meaningful access' to services, programs, or activities to which he or she was 'legally entitled.' " *Wright*, 831 F.3d at 72 (citing *Henrietta D.*, 331 F.3d at 272).  "Discrimination under the third prong can include 'failure to make a reasonable accommodation' for the inmate." *McFadden v. Noeth*, 827 Fed. App'x 20, 28 (2d Cir. 2020) (summary order) (citation omitted).  "In order 'to assure meaningful access, reasonable accommodations in the [] program[s] or benefit[s] may have to be made.' " *Wright*, 831 F.3d at 72 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).  "A reasonable accommodation must provide effective access to prison activities and programs." *Id.* at 73 (citation omitted). "[R]ecreational activities, medical services, and educational and vocational programs at state prisons are benefits within the meaning of Title II[.]" *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009) (internal quotation marks omitted) (citing *Pa. Dep't of Corr.*, 524 U.S. at 210).  "An accommodation is not plainly reasonable if it is so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him." *Wright*, 831 F.3d at 73 (citing *Disabled in Action v. Bd of Elections in City of N. Y.*, 752 F.3d 189, 200 (2d Cir. 2014)).

"[T]he plaintiff bears the initial burdens of both production and persuasion as to the existence of an accommodation that is "facial[ly] reasonable[]." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 190 (2d Cir. 2015).  "The burden of persuasion then shifts to the defendant to 'rebut the reasonableness of the proposed accommodation' by showing

14

that 'the proposed accommodation would cause [the defendant] to suffer an undue hardship.' " *Id.* "The ADA defines 'undue hardship' as 'an action requiring significant difficulty or expense, when considered in light of [a series of factors].' " *Stewart v. Cnty. of Salem*, 274 F.Supp.3d 254, 263 (D.N.J. 2017) (citing 42 U.S.C. § 12111(10)(A)).  "Among the factors to be considered are 'the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility.' " *Id.* (citing 42 U.S.C. § 12111(10)(B)).  The Second Circuit has extended this burden shifting framework to the prison setting.  *See Wright*, 831 F.3d at 76.

A reasonable accommodation "need not be 'perfect' or the one 'most strongly preferred' " by the plaintiff, but it must be "effective." *Wright,* 831 F.3d at 72 (quoting *Dean*, 804 F.3d at 189).  "Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012). "Determining the reasonableness of an accommodation is a fact-specific question that often must be resolved by a factfinder." *Id.* at 72–73 (citation, brackets, and internal quotation marks omitted).  Nevertheless, a defendant is entitled to summary judgment if "the undisputed record reveals that the plaintiff was accorded a 'plainly reasonable' accommodation." *Id.* at 73 (quoting *Dean*, 804 F.3d at 189).

### a. Access to SDU Resource Room

Defendants move for summary judgment and dismissal of Plaintiff's ADA and RA claims related to his access to the SDU Resource Room arguing that Plaintiff cannot establish that Defendants failed to accommodate him.  *See* Dkt. No. 70-1 at 16-18.  Defendants contend that Plaintiff had and continues to have meaningful, reasonable access to a SARA machine in the special education classroom during school hours and a SARA machine and an SDU-enabled

computer in the law library to perform his legal work.[4]  *Id*., Dkt. No. 70-3 at ¶ 28; Dkt. No. 70-4

at ¶ 19, 20.

In support of the motion for summary judgment, Morris provided a Declaration.  Dkt. No.

70-4.  Morris avers that Gibson "came" to her to communicate Plaintiff's request for additional

access to the Resource Room.  *Id.* at ¶ 14.  As such, Morris "began to inquire as to Plaintiff's

current access to the Resource Room" and discovered that Plaintiff was using the SDU computers

to conduct legal research, which is an improper use of the computers.  *Id*. at ¶¶ 14-15.  At that

time, Morris "became aware" that Plaintiff was receiving certain accommodations pursuant to a

settlement agreement, but that the subject agreement did not provide for the use of SDU-enabled

computers or the Resource Room.  *Id*. at ¶¶ 16-17.  Morris was informed that the prior DSP made

the decision to allow Plaintiff access to the Resource Room.  Dkt. No. 70-4 at ¶ 17.  Thus, Morris

decided that Plaintiff should receive only the accommodations set forth in the agreement and, if

Plaintiff desired additional accommodations, "he should follow the process as set forth in DOCCS

Directives."  *Id*. at ¶ 18.  Plaintiff was informed that he could access the SARA machine in the

Special Education classroom and in his vocational class and the "SDU-enabled computer in the

law library in conjunction with the SARA machine in that location to perform legal work."  *Id.* at

¶¶ 19-20.

It is also undisputed that, as of the date of this motion, Plaintiff receives the following

accommodations for educational and academic programming purposes: (1) testing

accommodations including 200% extended time on all tests, a testing location free of distractions

and a rest break every 30 minutes, consistent with previous recommendations; (2) access to a

---

[4] Defense counsel argues that Plaintiff "had and continues to have access to a SARA machine in [the vocational class for educational purposes[.]"  Dkt. No. 70-1 at 17.  However, as discussed *infra*, Plaintiff was removed from vocational programming.  Dkt. No. 70-6 at ¶ 18.  Accordingly, it is unclear whether Plaintiff currently has access to the SARA machine in the vocational area.

16

SARA machine with audio capabilities to assist with reading in educational environments; (3) access to audiobooks for cell and independent use; (4) access to one-on-one support with reading as necessary with repetitive demonstrations and paraphrased recall of directions for educational purposes; (5) a talking dictionary; and (6) access to a talking calculator.[5]  Dkt. No. 79 at ¶ 31.

Plaintiff argues that his request for access to the Resource Room was "facially reasonable" and that DOCCS failed to conduct an "individualized inquiry as to whether or not it would help Mr. Torres with his daily reading and writing if he could access the Resource Room."  Dkt. No. 80 at 18.  Plaintiff claims that without access to the SDU Resource Room computers, he is unable to read and write unassisted.  Dkt. No. 1 at ¶ 137.

Upon review of the undisputed record, the Court finds that Plaintiff has failed to establish, with competent evidence, any issue of fact with respect to his ADA and RA claims regarding his access to the Resource Room.   First, Plaintiff has not identified any programs, services, or benefits he was precluded from accessing due to his inability to use the Resource Room.  Rather, Plaintiff  contends that, due to his lack of access to the Resource Room, he is unable to read and write unassisted.  *See* Dkt. No. 1 at ¶ 137.  This general allegation, without evidence that the denial of access to the Resource Room prevents him from accessing services, programs, or activities, is insufficient to defeat Defendants' motion of summary judgment.  *See Parks v. Blanchette*, 144 F.Supp.3d 282, 340 (D. Conn. 2015) ("Evidence of a general decrease in one's well-being without a link to an inability to participate in a service, program or activity provided by a public entity, does not survive summary judgment under the ADA or Rehabilitation Act.") (citation omitted); *see also Walker v. City of New York*, 367 F.Supp.3d 39, 56 (S.D.N.Y. 2019) (dismissing ADA and RA claims where the plaintiff did not contend that he was denied access to

---

[5]  Plaintiff has not presented any challenge to the *Torres I* settlement agreement.

any prison programs or services, that his ability to access any programs or services was in any

way impaired, or that he was in any way dissuaded from using the general population buses);

*Ramrattan v. Fischer*, No. 13 CIV. 6890, 2015 WL 3604242, at *5 (S.D.N.Y. June 9, 2015)

("when an ADA claim does not state that a plaintiff was excluded from a prison service or

program, it must be dismissed."); *Carrasquillo v. City of New York*, 324 F.Supp.2d 428, 443

(S.D.N.Y. 2004) (dismissing ADA claim based upon the plaintiff's claim that he was housed away

from prison services, such as the law library and infirmary and that he had difficulty walking to

them, but did not allege that he was prevented altogether from accessing them) (citing *Devivo v.*

*Butler*, No. 97 Civ. 7919, 1998 WL 788787, at *4 (S.D.N.Y. Nov.10, 1998) (dismissing ADA

claim where blind inmate failed to allege that he was denied services in prison because he was

blind)).

Furthermore, Plaintiff does not dispute that he is able to access SARA machines in

different areas of the facility.  Plaintiff concedes that there is a SARA machine in the special

education classroom, located off of the Resource Room.  Dkt. No. 70-2 at ¶ 23.  Further, during

his deposition, counsel asked Plaintiff if there were areas of the facility "you go to use the SARA

machines" and Plaintiff responded:

> A.  Well, they got one in the law library now with a screen.  They got
> one in the general library without a screen.  And they got one in the
> school building for me in my - - in my desk, but I cannot use the one
> in the resource room.  I don't know why, but I couldn't use it.  That's
> it.[6]

Dkt. No. 70-9 at 73.  Accordingly, the record does not support Plaintiff's claim that he was denied

---

[6] Plaintiff testified that the SARA machine in the general library does not have a screen, and thus "he won't be able to follow the words[.]"  Dkt. No. 70-9 at 73-74.  However, the Court finds this argument to be unpersuasive as it is undermined by statements made by Plaintiff's counsel regarding Plaintiff's disability.  To wit, during Morris' deposition, Plaintiff's attorney stated, "[t]he device that's in the law library doesn't have audio on the SARA device.  It is a SARA Machine which blows it up, it doesn't have audio technology which unfortunately is what Mr. Torres - - blowing it up doesn't help.  He's dyslexic.  That just blows up jumbled letters.  It doesn't help him read." Dkt. No. 70-10 at 90-91.

meaningful access to SARA machines.  While Plaintiff may have preferred to have access to the

SARA machine in the Resource Room, "[t]he failure to provide [Plaintiff] with the specific

accommodations of his choosing does not violate the ADA or the Rehabilitation Act."  *Lopez v.*

*Kirkpatrick*, 505 Fed. App'x 58, 59 (2d Cir. 2012); *Kearney v. N.Y.S. D.O.C.S.*, No.

9:11-CV-1281 (GTS/TWD), 2013 WL 5437372, at *8 (N.D.N.Y. Sept. 27, 2013), *aff'd sub nom.*

*Kearney v. New York State Dep't of Corr. Servs.*, 581 Fed. App'x 45 (2d Cir. 2014) (summary

order) (holding that DOCCS refusal to grant the plaintiff "the accommodation of his choice" does

not subject the defendants to liability for disability discrimination); *see Alster v. Goord*, 745

F.Supp.2d 317, 340 (S.D.N.Y. 2010) ("[A]s long as [Defendants] reasonably accommodated [the

plaintiff's] disability, they need not provide him with the exact accommodations he demanded.")

(citation omitted); *see Mason*, 559 F.3d at 887 (affirming dismissal of ADA claim by blind inmate

who requested a qualified reader or interpreter, audio materials, training in Braille, or computer

software that reads written materials aloud to the blind finding that the defendant provided

sufficient accommodations including an inmate reader and access to audio materials and  a tape

recorder).

    The Court also notes that Plaintiff's claim that he cannot "read and write unassisted"

without access to the Resource Room is belied by Plaintiff's litigation and grievance history.[7]  In

March 2019, after he was denied access to the Resource Room, Plaintiff commenced a pro se

action in the United States District Court for the Southern District of New York ("Southern

District") by filing of a twelve-page, typewritten complaint against DOCCS, Acting

---

[7]  "A court may take judicial notice of a document filed in another court not for the truth of the matters
asserted in the other litigation, but rather to establish the fact of such litigation and related filings" *See Global
Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006).  The Court will take judicial notice of
Plaintiff's complaint filed on March 29, 2019, in *Torres v. DOCCS, et al.*, No. 1:19-CV-2883, (S.D.N.Y. Mar. 29,
2019) (*Torres II*), the related motion for counsel (Dkt. No. 3), and exhibits (Dkt. No. 4).  *See Candelaria v. Erickson*,
No. 01 CIV 8594, 2007 WL 1793443, at *2 (S.D.N.Y. June 18, 2007) (citation omitted).

Commissioner Anthony Annucci, Superintendent William A. Lee, Morris, Paton, Mannocchi, Gibson, and Inmate Grievance Supervisor Anthony J. Black. *See Torres v DOCCS, et al.*, No. 1:19-CV-2883 (S.D.N.Y. Mar. 29, 2019) ("*Torres II*"), Dkt. No. 1. With the complaint, Plaintiff also filed a letter seeking pro bono counsel and copies of more than fifteen typewritten letters dated February, March, and April 2019 to various attorneys seeking pro bono assistance.[8] *Id.*, Dkt. No. 3, Dkt. No. 4 at 51, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 66, 67, 68, 69. Further, from May 2018 until December 2018, while incarcerated at Eastern C.F. without access to the Resource Room, Plaintiff filed several typewritten grievances for a variety of issues including his accommodations, medical, legal mail, harassment, elevator use, and his property.[9] Dkt. No. 77-3 at 3. After the grievances were denied, Plaintiff submitted typewritten and handwritten appeal statements. *Torres II*, Dkt. No. 4 at 140-42, 150-52, 158-59, 166-67, 174.

Plaintiff's allegations of "daily" difficulties reading and writing without access to the Resource Room are further undermined by his ability to litigate <u>before</u> he had access to the Resource Room. To wit, in 1999, Plaintiff filed a pro se Petition for a Writ of Habeas Corpus in the Southern District. *See Torres v. Kelly*, No. 1:99-CV-2408 (S.D.N.Y. filed Apr. 1, 1999). Similarly, as discussed *supra*, Plaintiff commenced *Torres I*, pro se, with the filing of a seven-page, typewritten complaint in August 2011. *Torres I*, Dkt. No. 2. During the course of that litigation, Plaintiff filed an application for the appointment of counsel and two letters. *Id.*, Dkt. Nos. 9, 41, 43

To summarize, the aforementioned filings do not support Plaintiff's claim that he was

---

[8] On June 17, 2019, *Torres II* was dismissed after Plaintiff failed to comply with the a court order. *Torres II*, Dkt. No. 6.

[9] With his motion for summary judgment, Plaintiff provided a copy of a computer print-out with a list of Plaintiff's "closed" grievances. Dkt. No. 77-3 at 3. The actual grievances are part of the record in *Torres II*.

unable to "read and write" on a "daily" basis due to his lack of access to the Resource Room.  *See*

*Richardson v. Clarke*, 52 F.4th 614, 619–20 (4th Cir. 2022) (noting that the plaintiff's court

filings "cannot be squared" with the ADA claims and demonstrated that the accommodations that

the defendant provided permitted the plaintiff to read, research and compose detailed legal

filings).

The Court has considered Plaintiff's remaining arguments and finds no merit in the

allegations.  First, Plaintiff argues that he should have access to the Resource Room because it

"wasn't crowded" and the computer in the law library "isn't always working."  Dkt. No. 70-9 at

175, 177.  However, "criticisms and requests for more accommodations [are] not enough to create

a genuine issue of material fact on th[e] issue of the reasonableness of the accommodations"

provided by DOCCS.  *See Richardson*, 52 F.4th at 619–20.

Second, Plaintiff alleges that Defendants violated the ADA and RA because they failed to

conduct an individualized assessment as to whether Plaintiff should be afforded access to the

Resource Room.  Dkt. No. 80 at 18.  In support, Plaintiff cites to the Second Circuit decision in

*Wright.*  In *Wright*, the Circuit held, "DOCCS's reasons for rejecting Wright's

accommodation—to be able to use his motorized wheelchair—were not responsive to Wright's

specific request and individual circumstances.  As such the response was deficient and violated

Title II of the ADA and Section 504 of the RA."  *Wright,* 381 F.3d at 78.  However, the issues and

facts presented herein are dissimilar to those presented in *Wright*.  This Court is not presented

with a "blanket ban" and Plaintiff does not challenge the creation or enforcement of any DOCCS'

policies.[10]  The undisputed record establishes Morris made the decision to revoke Plaintiff's

access to the Resource Room after she reviewed the settlement agreement in *Torres I*, consulted

---

[10]  The complaint does not include any claim or cause of action challenging DOCCS' policies.

with Gibson and Dave Frisina, the Education Supervisor, and reviewed DOCCS' policies.  Dkt. No. 70-4 at ¶¶ 14, 16, 17, 18.  Upon review of the record, the Court concludes that Defendants sufficiently conducted a meaningful assessment of Plaintiff's need for access to the Resource Room.  *Cf. Pierce v. D.C.*, 128 F.Supp.3d 250, 254 (D.D.C. 2015) (awarding summary judgment to the plaintiff where the defendants failed to conduct a meaningful assessment of the plaintiff's needs i.e., they failed to inquire about the type of auxiliary aids needed, did not consult the Department of Corrections' own policies and "figuratively shrugged and effectively sat on their hands with respect to this plainly hearing-disabled person in their custody, presumably content to rely on their own uninformed beliefs about how best to handle him and certainly failing to engage in any meaningful assessment of his needs.").

Accordingly, because Plaintiff was not denied meaningful access to services and programs and DOCCS' response to Plaintiff's accommodation request was plainly reasonable, Plaintiff's ADA and Rehabilitation Act claim with respect to his access to the Resource Room fails as a matter of law.  *See Long v. Annucci*, No. 9:17-CV-916 (GLS/TWD), 2023 WL 8602053, at *6 (N.D.N.Y. Dec. 12, 2023).

Upon review of the record, the Court grants Defendants' motion for summary judgment on this ground and denies Plaintiff's cross motion for summary judgment on this claim.[11]

### b. Building Maintenance Program

Plaintiff claims that Defendants failed to reasonably accommodate him so he could finish the Building Maintenance Program and earn his vocational certificate.  Dkt. No. 1 at ¶ 139. Defendants allege Plaintiff was not excluded from the Building Maintenance Program due to his

---

[11] Because the Court grants Defendants' motion and dismisses Plaintiff's ADA and RA claims related to his access to the Resource Room, Defendants' arguments related to Gibson's personal involvement in the decision to remove Plaintiff from the Resource Room, *see* Dkt. No. 70-1 at 16-17, need not be addressed.

disability. Dkt. No. 70-1 at 18. Rather, Defendants assert that Plaintiff was removed due to safety concerns regarding his operation of power tools and reassigned to another program. *Id*. at 18-19. Defendants also argue that Plaintiff's requested accommodation would have imposed an undue hardship.[12] *Id*.

Defendants "are entitled to summary judgment only if it is undisputed that they provided Plaintiff with a reasonable accommodation for his disability[.]" *See Baxter v. Pennsylvania Dep't of Corr*., 661 Fed. App'x 754, 757 (3d Cir. 2016) (dismissing ADA claim because the defendants established that they were willing to find the plaintiff a suitable auto mechanics program at another institution). Here, there are issues of fact for a jury to resolve relating to whether the decision to transfer Plaintiff to the painting program was a reasonable accommodation. While it is undisputed that Plaintiff was transferred to the painting program in June 2018, it is also undisputed that he is no longer participating in the painting program or any vocational training. *See* Dkt. No. 70-6 at ¶ 18; Dkt. No. 70-9 at 164. The reasons for Plaintiff's removal from the painting program and the length of time he participated in the program, are unclear. Dkt. No. 70-10 at 81, 83; Dkt. No. 70-12 at 53; Dkt. No. 70-13 at 22. Plaintiff testified that Defendants "put him in the painting program and then closed it." Dkt. No. 70-9 at 128, 129, 163. In Mannocchi's Declaration in support of the motion, he avers that Plaintiff was removed from the painting program for medical reasons in October 2018. *See* Dkt. No. 70-6 at ¶ 18. However, Mannocchi also testified that the painting program instructor retired and therefore, "they closed that program." Dkt. No. 70-12 at 132. Moreover, in Morris' January 4, 2019 letter to the Legal Aid Society, she represented that "Inmate Torres is currently participating in the paint shop program

---

[12] While defense counsel argues that Plaintiff "does not have a right to participate in vocational training[,]" *see* Dkt. No. 70-1 at 18, this statement is not supported by the record and thus, will not be addressed. *See* Dkt. No. 70-4 at ¶ 30 (Morris avers that Plaintiff was entitled to participate in a vocational trade).

and no reports of safety or accommodation concerns have been raised." Dkt. No. 77-10.

Furthermore, while Defendants claim that the painting program was also a vocational trade, *see* Dkt. No. 70-10 at 83, Dkt. No. 70-12 at 53, the issue of whether the transfer was a "lateral transfer," as described by Mannocchi, is unclear.  *See* Dkt. No. 70-6 at ¶ 17.  In this regard, defense counsel provided unsubstantiated "facts" in the supporting papers.   To wit, in the Memorandum of Law, counsel states that, "[a]ny overlapping credits earned in the Building Maintenance Program transferred with Plaintiff to the painting program" and cites to Paton's deposition testimony.  Dkt. No. 70-1 at 20, n. 3.  The Court has reviewed Paton's deposition transcript and does not find support for that statement.  In fact, Paton testified that when Plaintiff started in the painting program, he "kind of started from scratch in terms of getting vocationally satisfied." Dkt. No. 70-13 at 89.  Paton also testified that "building trades and painting" are not "part of the same program."  *Id*. at 24.

As discussed *supra*, "[P]laintiff bears the initial burden of both production and persuasion as to the existence of an accommodation that is facially reasonable."  *Wright*, 831 F.3d at 76 (internal quotation marks and citation omitted).  Even assuming, for the purposes of this motion only, that Plaintiff satisfied his "light burden" with respect to the reasonableness of his proposed accommodations, *see Wright*, 831 F.3d at 76, there are issues of fact as to whether the requested accommodations would cause Defendants undue hardship.  Defendants argue that Plaintiff's request "for individualized training on the power tools [ ] created an unreasonable undue hardship" because, at the relevant time, there was one teacher "in charge or and observing" fifteen students.  *See* Dkt. No. 70-1 at 19; Dkt. No. 70-6 at ¶ 4.  Defendants further contend that "DOCCS does not provide teaching assistants for vocational training." Dkt. No. 70-1 at 19-20. However, Mannocchi testified that, in 2016 and 2017, he had "a couple" of teachers' assistants,

referred to as "IPAs" (Inmate Peer Assistants).  Dkt. No. 79 at p. 10, ¶ 34; Dkt. No. 70-12 at 112-113.  Further, Defendants have not addressed Plaintiff's request for a separate area that would allow him to avoid distractions in the shop.  Dkt. No. 70-4 at pp. 37-39.  Accordingly, there is a clear issue of fact regarding undue hardship.  *See Walsh v. Coleman*, No. 3:19-CV-980, 2021 WL 3036920, at *9 (D. Conn. July 19, 2021) (holding that undue hardship is a question of fact) (citing *Wright*, 831 F.3d at 76-77).

Accordingly, the Court finds there are material issues of fact for a jury to resolve regarding Plaintiff's ADA and RA claims related to his removal from the Building Maintenance Program.  Thus, the motions for summary judgment, on this issue, are denied.

**E.  Requests for Relief**

Having found an issue of fact with respect to the ADA and RA claims related to Plaintiff's removal from the Building Maintenance Program, the Court turns to Plaintiff's requests for relief.

### 1.  Prospective Injunctive Relief

In the complaint, Plaintiff asks the Court to, "[p]reliminarily and permanently ordering Defendants DOCCS, Morris and Gibson from denying Mr. Torres access to the SDU Resource Room and its computers and to reinstate him in the Building Maintenance Program and allow him to complete it."  Dkt. No. 1 at p. 25.  Plaintiff also seeks to enjoin "the named Defendants from enforcing the Computer Use Agreement and Law Library Policy against Mr. Torres."  *Id.* at p. 26.

Defendants argue that Morris, Paton, Mannocchi, and Gibson are not proper parties for prospective injunctive relief.  Dkt. No. 70-1 at 11-12.  Specifically, Defendants contend that Morris and Paton are retired from DOCCS and thus, lack the authority to implement injunctive relief.  *Id*.  Defendants also argue that Mannocchi and Gibson do not have the authority to award

the relief requested.  *Id.*

### a.  Morris, Paton, and Gibson

In response to the motion, Plaintiff voluntarily dismissed his request for injunctive relief against Morris and Paton.  Dkt. No. 80 at 7, n.2.   As such, Defendants' motion is granted, in this regard.  Further, as discussed *supra*, because the Court has granted Defendants' motion for summary judgment and dismissal of Plaintiff's ADA and RA claims related to his access to the Resource Room, Plaintiff's claims for prospective injunctive relief against Gibson are dismissed.

### b.  Mannocchi

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  This doctrine provides "a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment."  *Ford v. Reynolds*, 316 F.3d 351, 354-55 (2d Cir. 2003) (citation omitted).  Under this doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that claims brought pursuant to the *Ex Parte Young* exception cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).  However, this "exception to sovereign immunity only authorizes suit against officials with the authority to

provide the requested relief."  *Siani v. State Univ. of New York at Farmingdale*, 7 F.Supp.3d 304,

317 (E.D.N.Y. 2014); *Salvana v. New York State Dep't of Corr. & Cmty. Supervision*, No.

5:21-CV-735 (BKS/ML), 2022 WL 17083088, at *4 (N.D.N.Y. Nov. 18, 2022) (citation omitted);

*Melendez v. Schneiderman*, No. 9:13-CV-622 (GLS/ATB), 2014 WL 2154536, at *8, n.13

(N.D.N.Y. May 22, 2014) (noting that the supervisory official who has the authority to bring

about the specific injunctive relief plaintiff seeks, is an appropriate defendant).

      In the complaint, Plaintiff alleges that Mannocchi was his vocational instructor and was

"directly responsible for instructing and evaluating" him.  Dkt. No. 1 at ¶ 10.  Plaintiff does not

allege that Mannocchi has any authority related to the Computer Usage Agreement or law library.

The Court has thoroughly reviewed the record and finds no evidence to support the conclusion

that Mannocchi was empowered to grant the injunctive relief that Plaintiff seeks.  *See Myers v.

New York-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at *9 (E.D.N.Y. Aug. 5,

2013); *see also Brisco v. Rice*, No. 11-CV-578, 2012 WL 253874, at *4 (E.D.N.Y. Jan. 27, 2012)

(dismissing claim for prospective injunctive relief where the plaintiff failed to allege that the

defendant had authority to perform the relief sought).

      Furthermore, the Court notes that Plaintiff did not respond to Defendants' arguments

related to Mannocchi.  As such, for the reasons set forth herein and in Part IV(B) *supra*, the Court

grants Defendants' motion in this regard and dismisses Plaintiff's claims for prospective injunctive

relief against Mannocchi.

### 2.  Monetary Damages

      Defendants move for summary judgment and dismissal of Plaintiff's claims for monetary

damages against DOCCS.  Relying upon *Cummings v. Premier Rehab Keller, PLLC,* 142 S. Ct.

1562 (2022)*,* Defendants argue that compensatory damages, which are the only monetary

damages sought in the complaint, are not available under the ADA and RA. *See* Dkt. No. 70-1 at 12-13; Dkt. No. 85 at 9. Plaintiff objects to Defendants' interpretation of *Cummings* and argues that *Cummings* held that "only emotional distress damages are not recoverable" and he may recover nominal damages. *See* Dkt. No. 80 at 19-20.

In the December Order, the Court held,

> Notably, however, Torres' claims pursuant to the ADA and the Rehabilitation Act against individual defendants in their official capacities may be maintained only insofar as they seek prospective injunctive relief, and not monetary damages or declaratory relief. *See Donohue*, 980 F.3d at 77 n.15; *In re Deposit Ins. Agency*, 482 F.3d at 618; *Hill*, 2020 WL 2404771 at *5 n.4.

Dkt. No. 22 at 9.

While the December Order appears to have limited Plaintiff's request for relief to prospective injunctive relief, the Court notes that the December Order resolved the "individual defendants" motion to dismiss and that DOCCS was not a movant.[13] Here, both parties address the issue of monetary damages in the respective motions for summary judgment. Therefore, because there appears to be confusion regarding the status of Plaintiff's claim for monetary damages against DOCCS, the Court addresses the motion. *See Hill v. Blue Cross & Blue Shield of Michigan*, 237 F.R.D. 613, 616 (E.D. Mich. 2006) (noting that the Court's prior order as it remained "silent" on certain issues creating "a great deal of confusion between the parties").

The parties' briefs on this issue are identical to briefs presented on motions for summary judgment in *Matagrano v. DOCCS, et al.*, a case filed in this District involving the same plaintiff's counsel and the same defense counsel. *See Matagrano v. DOCCS*, 9:19-CV-0763, Dkt. No. 100-24 at 12-14; Dkt. No. 104-5 at 22-24; Dkt. No. 112-6 at 3-4 (N.D.N.Y.). In *Matagrano*,

---

[13] The December Order lacks any reference to the Court's authority to *sua sponte* dismiss Plaintiff's claims against DOCCS.

Chief Judge Sannes considered these arguments, discussed *Cummings,* and held that "Plaintiff may not recover emotional distress damages on his Rehabilitation Act and ADA claims." *Matagrano*, 2023 WL 5932943, at *7-8.  Addressing the issue of nominal damages, Chief Judge Sannes held:

> . . . Plaintiff's prayer for relief seeks compensatory damages and "such other relief as the court may deem just and proper," (Dkt. No. 49, at 35), and his failure to specifically request nominal damages in the complaint is not determinative, see *Fantasia v. Montefiore New Rochelle*, No. 19-CV-11054, 2022 WL 20540940, at *5, 2022 U.S. Dist. LEXIS 107935 (S.D.N.Y. June 16, 2022) (noting that a plaintiff "may seek nominal damages at trial even if she did not explicitly request nominal damages in her complaint" (citations omitted)). At least some district courts have concluded that nominal damages are available under the Rehabilitation Act and ADA even though emotional distress damages are not recoverable. *See id.*, 2022 WL 20540940, at *5, 2022 U.S. Dist. LEXIS 107935 (concluding that nominal damages are available under the Rehabilitation Act because "nominal damages are a generally accepted remedy in contract actions"); *Vega-Ruiz v. Northwell Health Sys*., No. 19-CV-537, 2023 WL 2587508, at *3, 2023 U.S. Dist. LEXIS 47769 (E.D.N.Y. Mar. 20, 2023) (finding that the plaintiff "still has a claim for nominal damages" under the Rehabilitation Act); *but see K.G. v. Woodford Cnty. Bd. of Educ.*, No. 18-CV-555, 2022 WL 17993127, at *3–4, 2022 U.S. Dist. LEXIS 233069 (E.D. Ky. Dec. 29, 2022) (discussing a lack of uniformity on the issue); *Hacker v. Dart*, 62 F.4th 1073, 1087 (7th Cir. 2023) (noting that a claim for nominal damages "can present some challenging legal issues, including whether Congress authorized them under the ADA or the Rehabilitation Act").
>
> Thus, because it is not clear that there is no relief to which Plaintiff may be entitled should he prevail on his Rehabilitation Act and ADA claims, the Court denies Defendants' motion for summary judgment on this basis.

*Matagrano*, 2023 WL 5932943, at *7–8.

Because the parties' arguments are a "replay" of the arguments set forth in *Matagrano*, this Court reaches the same result here.  *See Moss v. MBNA Tech., Inc*., No. CIV.A.3:03-CV-1429-N, 2004 WL 583565, at *1 (N.D. Tex. Mar. 24, 2004).  Accordingly, the Court denies this portion of

Defendants' motion.

**F. Eleventh Amendment**

Defendants argue that Plaintiff's claim for money damages in connection with his ADA claim are barred by the Eleventh Amendment. Dkt. No. 70-1 at 24-29. The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). DOCCS is a state agency for purposes of the Eleventh Amendment. *See Simmons v. Gowanda Corr. Facility*, No. 13–CV–0647, 2013 WL 3340646, at *2 (W.D.N.Y. July 1, 2013); *Jackson v. Johnson*, 985 F.Supp. 422, 426 (S.D.N.Y. 1997).

In *Garcia v. SUNY Health Sciences Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001), the "Second Circuit recognized that Section 5 of the Fourteenth Amendment grants Congress some authority to abrogate a state's sovereign immunity." *Quezada v. Fischer*, No. 9:13-CV-0885 (MAD/TWD), 2017 WL 9509993, at *35 (N.D.N.Y. Aug. 31, 2017), *report and recommendation adopted sub nom.*, 2017 WL 4286304 (N.D.N.Y. Sept. 27, 2017). The Circuit found that sovereign immunity could be abrogated under Title II of the ADA if a plaintiff could establish "that the Title II violation was motivated by discriminatory animus or ill will based on plaintiff's

disability." *Garcia*, 280 F.3d at 111.

"After *Garcia*, the Supreme Court decided *United States v. Georgia*, in which it held that insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Matagrano*, 2023 WL 5932943 at *16 (internal quotation marks omitted) (citing *U.S. v. Georgia*, 546 U.S. 151, 159 (2006)).   The Supreme Court remanded the matter to the lower courts to determine, "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id*. (citing *Georgia*, 546 U.S. at 158–59).

"The Second Circuit has not fully resolved the question of whether, or to what extent, *Garcia* remains valid in light of *Georgia*." *Matagrano*, 2023 WL 5932943, at *17.  "[S]ome courts have continued to apply *Garcia*'s 'discriminatory animus or ill will' requirement" while "[o]thers have applied the three-part test articulated in *City of Boerne v. Flores*, to determine whether, for the particular Title II violation alleged, there is a 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.' " *Id.* (internal citations and citations omitted).  "Under *Boerne*, the court must determine: (1) the constitutional right or rights that Congress sought to protect when it enacted the statute; (2) whether there was a history of constitutional violations to support Congress's determination that prophylactic legislation was necessary; and (3) whether the statute is a congruent and proportional response to the history and pattern of constitutional violations." *Phelan v. Thomas*, No. 9:10-CV-11 (GLS/DJS), 2017 WL 519246, at *5 (N.D.N.Y. Feb. 8, 2017) (citations omitted).

Here, defense counsel has once again reiterated arguments set forth in the *Matagrano* motions. *See Matagrano*, 9:19-CV-0763, Dkt. No. 100-24 at 22-28. Defendants argue, as they did in *Matagrano*, that, under either test, "abrogation is not appropriate[.]" Dkt. No. 70-1 at 27.

Upon a review of the record, the Court finds no evidence to support the conclusion that any defendant was "motivated by discriminatory animus or ill will" based on Plaintiff's disability. *See Shomo v. Dep't of Corr. & Cmty. Supervision*, No. 21-CV-00128, 2022 WL 1406726, at *6 (S.D.N.Y. May 4, 2022) (holding that DOCCS is entitled to sovereign immunity where the plaintiff does not allege that Defendants acted with discriminatory animus or ill will based on his disability). Indeed, the evidence, which establishes that DOCCS provided Plaintiff with numerous accommodations, weighs against a finding of discriminatory intent. *See Matagrano*, 2023 WL 5932943, at *17 (finding no discriminatory animus where CNYPC provided the plaintiff with certain accommodations and responded to his hearing aid battery issues); *see also Kearney*, 2013 WL 5437372, at *10 (N.D.N.Y. Sept. 27, 2013) (holding that "the numerous accommodations granted to Plaintiff in lieu of the requested transfer weigh against a finding of discriminatory animus").

With respect to the *Georgia* analysis, here, as in *Matagrano*, Defendants argue that *Chase v. Baskerville*, 508 F.Supp.2d 492 (E.D. Va. 2007) is "instructive" and suggest that the constitutional right at issue is the right to equal protection under the Fourteenth Amendment. Dkt. No. 70-1 at 28-29. In *Matagrano*, the Court noted that it, "agrees with those courts who have found that state prisoners' claims fail the third step of the *City of Boerne* test because, in the prison context, Title II is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *Matagrano*, 2023 WL 5932943 at *18 (internal quotation marks and citations omitted). The

Court held:

> because there is no indication that Defendants acted irrationally or arbitrarily, or were motivated by discriminatory animus or ill will, the conduct alleged by Plaintiff is "far afield from the essence" of the Equal Protection Clause. *Id*.; *see also Chase*, 508 F.Supp.2d at 504 ("In short, Title II imposes an affirmative accommodation obligation in the administration of state prisons that far exceeds what the Equal Protection Clause requires.").

*Matagrano*, 2023 WL 5932943, at *18.

Similarly, here, the record lacks evidence establishing that Defendants were motivated by discriminatory animus or ill will.

The Court also acknowledges that Plaintiff did not provide a substantive argument in response to this portion of Defendants' motion.  Plaintiff did not address *Garcia* or *Georgia* and argues only that, "[b]ecause Plaintiff can proceed on his Section 504 claims for damages regardless of whether there is Eleventh Amendment immunity under the ADA, Mr. Torres' damages claims will not disappear."  Dkt. No. 80 at 22.

Accordingly, for the reasons set forth herein, in Part IV(B) *supra*, and in *Matagrano*, the Court concludes that Plaintiff's ADA claims for monetary damages are barred by the Eleventh Amendment.

## G.   Conduct of Counsel

In deciding Defendants' motion for summary judgment, and Plaintiff's cross motion for partial summary judgment, the Court was required to review several transcripts.  In reviewing Plaintiff's deposition transcript in this case, the Court believes that counsel for Plaintiff engaged in unprofessional and unacceptable conduct.

There are numerous instances in the transcript where Plaintiff's counsel, Amy Jane Agnew, refers to her client as "honey."  Depositions are an integral part of the litigation process, and the

Court expects all counsel to comport themselves in a professional manner.  Calling a client "honey" is inappropriate.

Even more concerning to the Court, is Ms. Agnew's failure to adhere to Rule 30(c) of the Federal Rules of Civil Procedure.  Throughout the deposition, rather than interposing appropriate objections, Ms. Agnew essentially testified on behalf of her client.  So prevalent was this practice, that the Court could barely read the transcript in a comprehensible fashion.  There were simply too many instances where Ms. Agnew was answering for her client, or making gratuitous, improper statements.  The Court has attached a limited number of examples of Plaintiffs counsel's inappropriate conduct to this decision.

Ms. Agnew is advised that in the future, she must adhere to the Federal Rules in conducting depositions.  Plaintiff's counsel is instructed to maintain the appropriate level of professionalism at depositions and she should refer to her clients by their name.  She must refrain from constantly interrupting depositions with her own version of answers and with inappropriate comments.

## V.  CONCLUSION

**ORDERS** that Defendants Motion for Summary Judgment and dismissal of Plaintiff's First Amendment claims is **GRANTED**; and the Court further

**ORDERS** that Defendants Motion for Summary Judgment and dismissal of Plaintiff's claims for prospective injunctive relief against Defendants Paton, Morris, Mannocchi, and Gibson is **GRANTED**; and the Court further

**ORDERS** that Defendants' Motion for Summary Judgment and dismissal of Plaintiff's claim for monetary damages in relation to his ADA claim against DOCCS as barred by the Eleventh Amendment is **GRANTED**; and the Court further

**ORDERS** that Paton, Morris, Mannocchi, and Gibson are terminated from this action; and

the Court further

      **ORDERS** that Defendants' Motion for Summary Judgment is **DENIED in all further respects**; and the Court further

      **ORDERS** that Plaintiff's Cross Motion for Partial Summary Judgment is **DENIED**; and the Court further

      **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

Dated: March 13, 2024
      Albany, New York

`Mae A. D'Agostino`
`U.S. District Judge`

35